# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-220-ECM-WC |
| The Estate of JACK WILLIAM MOCK, Deceased; AMBER CAMILE NEVELS; and the Estate of KLN, a Deceased Minor, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motions: Plaintiff Progressive Specialty Insurance Company's ("Progressive") Motion for Entry of Default Judgment Against Defendants Amber Camile Nevels and the Estate of KLN (Doc. 33); Progressive's Motion for Summary Judgment (Doc. 35); Defendant Estate of Jack William Mock's ("the Estate of Mock") Cross-Motion for Summary Judgment (Doc. 40); and the Estate of Mock's Motion to Allow Filing Out of Time of its Cross-Motion for Summary Judgment (Doc. 43). Having reviewed the respective motions, the parties' briefs, and the relevant legal authority, and for the reasons that follow, the Court finds that Progressive's motion for entry of default is due to be GRANTED, Progressive's motion for summary judge is due to be GRANTED, the

Estate of Mock's motion is due to be DENIED, and the Estate of Mock's Motion to Allow Filing Out of Time is denied as MOOT.

## I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202. The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean–Baptiste v. Gutierrez,* 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.,* 276 F.3d 1275, 1279 (11th Cir. 2001). If the movant meets its evidentiary burden, the burden shifts

to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex,* 477 U.S. at 324.

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.,* 224 F.2d 338, 345 (5th Cir. 1955). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Citizens Bank and Trust v. LPS Nat. Flood, LLC,* 51 F.Supp. 3d 1157, 1168–69 (N.D. Ala. 2014).

### III. BACKGROUND

Plaintiff and the Mock Estate have stipulated to the following facts:

1. In 2007, Plaintiff Progressive issued an Automobile Insurance Policy, Policy Number 20537994, (hereinafter "the Policy"), to Josh Lowery. The Policy insured multiple vehicles over time, including a 2002 Honda Civic, bearing VIN# 1HGEM21242LO70660. …

2. When Josh Lowery applied for the Policy in 2007, he signed a "Rejection of Uninsured/Underinsured Motorist Coverage" form. The signed rejection form states includes the language "binding on all persons insured under this policy, and that this rejection shall also apply to any renewal, reinstatement, substitute, amended, altered, modified,

or replacement policy with this company or any affiliated company, unless a named insured submits a request to add the coverage and pays the additional premium." …

3. The Policy was continually renewed by Josh Lowery over the next eight years. The Policy did not contain uninsured/underinsured motorist coverage. Additionally, Josh Lowery did not submit any request to add such coverage, nor did he pay the additional premium to obtain uninsured/underinsured motorist coverage during this time period. The latest policy renewal occurred on October 30, 2015 and extended Josh Lowery's automobile insurance coverage until April 30, 2016. See Exhibit 1. At the time of the October 30, 2015 policy renewal, the Policy continued to insure multiple vehicles, including a 2002 Honda Civic, bearing VIN No. 1HGEM21242LO70660.

4. On November 27, 2015, at 12:55 p.m., Josh Lowery requested Progressive by telephone to amend portions of the Policy previously issued by Progressive. Specifically, Josh Lowery updated his marital status from single to married. Additionally, Lowery added his new spouse, Deeanna M. Lowery, and her vehicle, a 2015 Toyota Highlander, to the Policy. The premium for coverage in relation to Deeanna M. Lowery's vehicle was paid, however, no premium for uninsured/underinsured motorist coverage was paid. Lowery was told by Progressive during this phone call that he would be mailed an uninsured motorist rejection form which would need to be returned to Progressive confirming his rejection of uninsured motorist coverage. …

5. The aforementioned amendments to the Policy were not made during a time of a renewal of the contract. Additionally, Josh Lowery was not issued a new insurance policy as a result of the amendments. The amendments were noted and incorporated into the existing Policy that was initially issued in 2007 and renewed each year, with the most recent renewal occurring on October 30, 2015. …

6. On the same day as the telephone call described above, November 27, 2015, Josh Lowery gave permission to Jack William Mock, deceased, to drive his 2002 Honda Civic. At that time, the 2002 Honda Civic was insured under the Policy issued to Josh Lowery by Progressive. KLN, a deceased minor, and Amber Camile Nevels, were

passengers in the 2002 Honda Civic at the time Jack William Mock was in control of the vehicle.

7. On November 27, 2015, at approximately 10:35 p.m., the 2002 Honda Civic was struck head-on by a pick-up truck. Jack William Mock and KLN were killed as a result of the collision. Additionally, Amber Camile Nevels was injured as a result of the impact.

8. At the time of the accident on November 27, 2015, neither Jack William Mock, KLN nor Amber Camile Nevels were resident relatives of the household of Josh Lowery and Deeanna M. Lowery. In addition, none of these parties were "named insureds" under the Policy at issue.

9. On December 5, 2015, both Josh Lowery and Deeanna Lowery signed the "Rejection of Uninsured/Underinsured Motorist Coverage" form mailed to them by Progressive. This form was mailed back to Progressive. …

10. Subsequent to the November 27, 2015 accident, a claim for underinsured motorist coverage was made on behalf of the Estate of Jack William Mock against the above-described Progressive policy.

(Doc. 35 at 2-5; Doc. 40-9). On November 28, 2015, Progressive mailed a document to Lowery, which stated:

> Previously, you rejected Uninsured/Underinsured Motorist (UM/UIM) coverage; however, since you added a secondary named insured to your policy, we now need another Rejection of UM/UIM coverage form signed by both you and the secondary named insured.
>
> Please sign and return the enclosed form to continue to reject this coverage. If you and the secondary named insured do not sign and return the form, we'll add UM/UIM coverage back on to the policy, which will increase your premium.

(Doc. 40-6 at 1).

On March 31, 2016, Progressive filed the Complaint in this Court seeking a "judgment declaring the duties, rights, obligations, and responsibilities existing between and among the parties to this action, and that said judgment will declare that Plaintiff Progressive does not owe any obligations or contractual benefits to Defendants." (Doc. 1 at 5). On April 27, 2018, the Estate of Mock answered the Complaint, entering a general denial of the allegations. (Doc. 7). Neither Nevels nor the Estate of KLN have responded to the Complaint. On February 9, 2017, District Judge Myron H. Thompson entered an order granting Plaintiff's application (Doc. 20) for a clerk's entry of default against the Estate of KLN and denying without prejudice Plaintiff's request for a default judgment. (Doc. 28 at 2).

## IV. DISCUSSION

### A. Motions for Summary Judgment

The material facts in this case are not in dispute, and the parties agree as to the dispositive issue. "Progressive asserts that benefits are not due pursuant to the 2007 UM/UIM motorist rejection signed by Josh Lowery, the failure to request UM/UIM coverage once Deeanna Lowery was added to the Policy in 2015, the verbal and written declination of UM/UIM coverage of the Lowerys in 2015, and the failure of Josh Lowery and Deeanna Lowery to pay any premium to obtain UM/UIM motorist coverage." (Doc. 35 at 6). The Estate of Mock argues that "At the time Mr. Mock was killed and this claim arose, the named insureds on the

Lowery policy had not executed the written rejection required by Alabama law. It is undisputed that Mr. Mock was an insured as defined in the policy. ([Doc. 40-2] Exhibit 1, p. 15). Since "the statutory conditions are present," this Court must infer the existence of minimum uninsured motorist coverage." (Doc. 40 at 15)(footnote omitted).

> Alabama's uninsured-motorist statute provides, in pertinent part:
>
> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him or her by the same insurer.

§ 32-7-23(a), Ala. Code 1979. The Alabama Supreme Court has held:

> Although the statute, Code 1975, § 32-7-23, provides that no automobile liability insurance shall be delivered or issued for delivery without uninsured motorist coverage, it also allows the insured to reject the coverage. Hence, the coverage spoken to in § 32-7-23 is not mandatory, and the failure to carry the coverage does not violate the public policy of this State.

*McCullough v. Standard Fire Ins. Co. of Alabama*, 404 So. 2d 637, 639 (Ala. 1981).

In this case it is undisputed that before the accident, the only named insured was Josh Lowery. Josh Lowery had specifically agreed that his rejection of UM/UIM coverage would be "binding on all persons insured under this policy, and that this rejection shall also apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured submits a request to add the coverage and pays the additional premium." (Doc. 35 at 2-3). The same day as the accident, Josh Lowery added his wife Deeanna M. Lowery as a named insured. It is undisputed that Josh Lowery represented to Progressive his continued rejection of UM/UIM coverage, that on December 5, 2015, Deeanna Lowery executed a signed writing rejecting UM/UIM coverage, and that the Lowerys never paid a premium for UM/UIM coverage to Progressive. *Id.*

The Alabama Court of Civil Appeals recently summarized the state of the law as to the Alabama's uninsured-motorist statute.

> Section 32–7–23(a) governs uninsured-motorist coverage and has been interpreted as requiring an applicant reject UIM coverage in writing. *See Continental Cas. Co. v. Pinkston*, 941 So. 2d 926, 929 (Ala. 2006) (interpreting § 32–7–23(a) as "requir[ing] that every automobile-liability-insurance policy issued or delivered in Alabama provide uninsured/underinsured-motorist coverage with limits for bodily injury or death of at least $20,000 per person, unless the coverage is specifically rejected in writing by the named insured"). "The Uninsured Motorist Statute, Code 1975, § 32–7–23, absent rejection by the named insured, mandates uninsured motorist coverage for the protection of persons insured under a motor vehicle liability policy." *Holloway v. Nationwide Mut. Ins. Co.*, 376 So. 2d 690, 694 (Ala. 1979). Any

"rejection of uninsured motorist coverage will be effective only if signed in writing by the named insured." *Progressive Cas. Ins. Co. v. Blythe*, 350 So. 2d 1062, 1065 (Ala. Civ. App. 1977). S*ee also State Farm Mut. Auto. Ins. Co. v. Martin*, 292 Ala. 103, 106, 289 So. 2d 606, 609 (1974) (explaining that an insurer must offer to provide uninsured-motorists' coverage but that an insured may reject that coverage in writing).

*Johnson v. First Acceptance Ins. Co., Inc.*, 227 So. 3d 77, 79–80 (Ala. Civ. App. 2017).

The Alabama Supreme Court held:

> The language of the "Rejection of Uninsured/Underinsured Motorist Coverage" undercuts [the husband's] … argument that both his and [his wife's] signatures were required to render the rejection of uninsured/underinsured-motorist coverage effective and that, therefore, [the husband] can claim such benefits on [the daughter's] behalf. The "Rejection of Uninsured/Underinsured Motorist Coverage" [the wife] signed provides: "I understand and agree that this rejection of Uninsured/Underinsured Motorist Coverage shall be binding on all persons insured under the policy." This Court has held:
>
>> "'If the language contained in the contract is unambiguous, the policy must be enforced as written.
>>
>> "'In determining whether the language of a contract is ambiguous, courts construe the words according to "the interpretation ordinary men would place on the language used therein." *Quick v. State Farm Mutual [Automobile] Ins. Co.,* 429 So.2d 1030, 1033 (Ala.1983). The words are given the meaning that "persons with a usual and ordinary understanding" would place on the words. *Cashatt v. State Farm Mutual [Automobile] Ins. Co.,* 510 So. 2d 831, 833 (Ala. Civ. App. 1987).'"
>
> *Liggans R.V. Ctr. v. John Deere Ins. Co.,* 575 So. 2d 567, 569 (Ala. 1991) (quoting the trial court's order). The unambiguous and "ordinary understanding" of the language in the "Rejection of

> Uninsured/Underinsured Motorist Coverage" indicates that the policy does not require the signatures of all the insureds for a rejection of uninsured/underinsured-motorist coverage to be valid.

*Progressive Specialty Ins. Co. v. Naramore*, 950 So. 2d 1138, 1141-42 (Ala. 2006).

In this case, it is clear that Josh Lowery exercised his right to reject UM/UIM coverage at the inception of the policy he purchased from Progressive and that his rejection, as a matter of contract, continued with each renewal of the policy. Like the policy in *Naramore*, the policy in this case specifically stated that it would be "binding on all persons insured under this policy, and that this rejection shall also apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured submits a request to add the coverage and pays the additional premium." It is undisputed that on November 27, 2015, Deeanna Lowery became a named insured on the policy and that she did not reject UM/UIM coverage in writing until December 5, 2015. The undisputed evidence suggests that Deeanna Lowery intended to reject UM/UIM coverage, as evidenced by her eventual written rejection and the fact that she and Josh Lowery never paid an additional premium or requested that such coverage be added. However, the dispositive fact in this case is that Josh Lowery, as a named insured, executed an unambiguous rejection of UM/UIM coverage that "indicates that the policy does not require the signatures of all the insureds for a rejection of uninsured/underinsured-motorist coverage to be valid."

*Naramore*, 950 So. 2d at 1142. Under the ordinary meaning of the insurance contract, with the addition of Deeanna Lowery as a named insured, the contract was "amended, altered, [or] modified," in which case the rejection would remain in effect "unless a named insured submits a request to add the coverage and pays the additional premium." No named party ever requested that the rejection be voided, and none of the Defendants in this matter are named insureds. Moreover, a party who is not a named insured "cannot, by relying on the fact that he did not sign the 'Rejection of Uninsured/Underinsured Motorist Coverage,' make a claim for such benefits…'" *Id.* "If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Turner v. United States Fidelity & Guaranty Co.*, 440 So.2d 1026, 1028 (Ala. 1983). Josh Lowery's written rejection of UM/UIM coverage is unambiguous, specifically excludes UM/UIM coverage, and the addition of a named insured was, without more, insufficient to void the validity of that rejection of UM/UIM coverage as to the class of insured persons under the terms of the contract.

### B. Plaintiff's Motion for Entry of Default Judgment

Progressive moves this Court "to enter final default judgment against Defendants Amber Camile Nevels and the Estate of KLN, a Deceased Minor, pursuant to Rule 55(b)(2), Fed.R.Civ.P." (Doc. 33 at 1). "Subsequent to the filing

of this Declaratory Judgment Complaint, Progressive obtained service on both Defendants. Neither has answered the Declaratory Judgment Complaint or otherwise defended this case." *Id.* at ¶ 2.  Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules ... the clerk shall enter the party's default." Once this has occurred, "the party entitled to a judgment by default shall apply to the court therefor." Fed. R. Civ. P. 55(b)(2).

However, the failure to defend does not automatically entitle a plaintiff to recover. *See Nishimatsu Construction Company, Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) ("A defendant's default does not in itself warrant the court entering default judgment" because "[t]here must be a sufficient basis in the pleadings for the judgment entered."). In other words, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) (citations omitted).

> Although *Nishimatsu* did not elaborate as to what constitutes "a sufficient basis" for the judgment, we have subsequently interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.,* 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").

> When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965).

*Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

On March 31, 2016, Progressive commenced this action against Defendants the Estate of Mock, Amber Camile Nevels, and the Estate of KLN (Doc. 1). On April 27, 2016, the Estate of Mock filed an Answer. (Doc. 7). On July 21, 2016, Progressive filed an Application for Entry of Default Judgment against the Estate of KLN. (Doc. 20). On September 7, 2016, Progressive filed an Application for Entry of Default Judgment Against Amber Camile Nevels. (Doc. 23). On September 13, 2016, the Clerk of the Court entered a default against Nevels. (Doc. 25). On February 9, 2017, a default was entered against the Estate of KLN. (Doc. 28 at 2). Because Defendants Nevels and the Estate of KLN have not appeared in this action by answering the Complaint, filing defensive motions, or offering any response indicating an intent to defend, this Court finds that a default judgment is warranted. As set forth above in the discussion of the motions for summary judgment, the allegations set forth in the Complaint establish that Progressive does not have a duty to extend UM/UIM benefits to the Defendants in this matter pursuant to a valid

rejection of UM/UIM benefits executed in writing by named insured Josh Lowery. Therefore, this Court will enter a default judgment against Defendants Nevels and the Estate of KLN declaring that Progressive owes no UM/UIM benefits to Nevels or the Estate of KLN arising from the underlying automobile accident of November 27, 2015.

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff Progressive's motion for summary judgment (Doc. 35) is **GRANTED**. Progressive is not liable for any UM/UIM coverage under the Josh Lowery policy for the accident at issue in this case.

Defendant Estate of Mock's motion for summary judgment (Doc. 40) is **DENIED**; Plaintiff Progressive's motion for default judgment against Defendants Nevel and the Estate of KLN (Doc. 33) is **GRANTED**; and Defendant Estate of Mock's motion to allow filing out of time (Doc. 43) is denied as **MOOT**.

**DONE** and **ORDERED** this 27th day of August 2018.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE